**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| THOMAS MERRITT, | Case No. 1:15-cv-323 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Thomas Merritt filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED.

**I. Summary of Administrative Record**

Plaintiff filed applications for both Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") on October 27, 2011 alleging a disability onset date of October 31, 2009, due primarily to mental and intellectual disability. (Tr. 135). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 16- 182). In September 2013, Administrative Law Judge ("ALJ") Deborah Smith held a hearing, at which Plaintiff appeared with counsel. Plaintiff, his attorney, and a vocational expert all testified. Plaintiff filed a request to amend the alleged onset date to April 14, 2012 (Tr.

260). ALJ Smith issued a decision on January 21, 2014, concluding that Plaintiff was not disabled. (Tr. 16-29). Plaintiff now seeks judicial review of that decision.

The record on which the ALJ's decision was based reflects that Plaintiff was 30 years old, defined as a younger individual, at the time his alleged disability began. He has an eighth grade education but later received his GED and was attending National College at the time of the ALJ hearing. (Tr. 45-46). He has no past relevant work. (Tr. 47). Plaintiff has a history of mental illness and alleges disability primarily based upon bipolar disorder. He is insured for purposes of DIB only through June 30, 2012.

The ALJ determined that Plaintiff has the following "severe" impairments: "bipolar disorder, personality disorder, and a history of polysubstance abuse." (Tr. 18). The ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (*Id*). Rather, the ALJ concluded that Plaintiff retained the following residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [H]e would be able to perform simple, routine tasks in a setting without fast pace. He would be able to work superficially with others. He would be able to work in a setting without frequent changes.

(Tr. 20). The ALJ determined, based on the VE's testimony, that Plaintiff still could perform the representative occupations of industrial cleaner and garment coverer, which exist in significant numbers in the national economy. (Tr. 28). Therefore, the ALJ concluded that Plaintiff is not under a disability. (Tr. 29).

2

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to properly weigh medical opinions; and (2) utilizing a selective summary of evidence to bolster a non-disability finding. Upon careful review, the undersigned finds Plaintiff's asserted errors are well-taken and this matter should be remanded for further review.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

3

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion .... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Evaluation of the Opinion Evidence is not Substantially Supported.**

Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence because it is based upon an improper evaluation of the opinion evidence. Plaintiff contends that in the reasons given by the ALJ in discounting the opinions of her treating physician, examining consultative psychologist and reviewing medical advisor were not "good reasons" mandated by agency regulations and controlling law. Plaintiff further asserts that the ALJ failed to provide sufficient rationale for the assigned significant weight to the opinions of the state agency physicians. The undersigned agrees that the ALJ's evaluation of the opinion evidence is not substantially supported.

On January 30, 2012, Plaintiff was sent for a consultative examination with Norman Berg, Ph.D., at the request of the state agency. (Tr. 557). Dr. Berg diagnosed Mood Disorder, as well as alcohol abuse and polysubstance abuse, both in remission for 8 months based on Plaintiff's self-report. (Tr. 562). She assigned a Global Assessment of Functioning score (GAF) of 53, indicating only moderate symptoms and limitations. Dr. Berg concluded that Plaintiff was "able to understand, remember, and carry out verbal instructions," and he was "able to perform simple tasks and is able to perform 2-step tasks." (Tr. 563). Dr. Berg wrote that Plaintiff "appears to have reduced stress tolerance with tendency to easily become agitated and angry when under stress. Based on this, claimant would presently have difficulty responding appropriately to work pressures." (Tr. 564). Likewise, he reported that he "mentioned that at the present time he easily becomes suspicious and angry with others. Based on this, claimant would presently have difficulty responding appropriately to supervision and to coworkers." (Tr. 563).

5

On February 3, 2012, Jennifer Swain, Psy.D., evaluated Plaintiff's mental health records for the state agency. (Tr. 114-119). Dr. Swain determined Plaintiff had mild limitations in activities of daily living; moderate limitations maintaining social functioning; moderate limitations maintaining concentration, persistence or pace; and no episodes of decompensation. (Tr. 116). Dr. Swain opined that because Plaintiff functioned in the low average to average range of intelligence with organized thoughts and normal recall, "[h]e would be able to perform simple, routine tasks in a setting without fast pace." (Tr. 119). Dr. Swain reported that "[w]hile on medications, [Plaintiff] presents as cooperative with satisfactory eye contact," and accordingly, he "would be able to work superficially with others," and "[h]e would be able to work in a setting without frequent changes." (Tr. 119). On April 23, 2012, Roseann Umana, Ph.D., completed a separate and independent review of the medical records upon reconsideration of Plaintiff's claim and affirmed Dr. Swain's assessment in whole.

The record also contains a functional assessment completed by Sunny Lu, M.D., on February 26, 2013. Dr. Lu had been treating Plaintiff at Crossroads Center for the previous 5 months. (Tr. 711). She diagnosed schizoaffective disorder and assessed a GAF score of 40, indicating the borderline of serious symptoms and limitations and impairment in reality testing or communication. (Tr. 712). Dr. Lu checked boxes indicating that Plaintiff had well-groomed appearance, but guarded attitude, halted speech, circumstantial thought process, fair insight, and psychomotor retardation. (Tr. 712). She observed that Plaintiff had severe impairments in attention and concentration, and he reported severe impairment in memory. (Tr. 712). Dr. Lu checked boxes indicating that Plaintiff had minimal functional abilities in all 17 areas assessed. (Tr.

6

713). She also indicated that Plaintiff had marked limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, as well as "repeated episodes of decompensation, each of extended duration." (Tr. 714-716)

On May 15, 2013, psychologist Catherine Staskavich completed a Mental Functional Capacity Assessment form. (Tr. 718). Dr. Staskavich rated Plaintiff's limitations in 20 areas. (Tr. 718). Specifically, Dr. Staskavich found that Plaintiff had moderate limitations in 13 areas, and marked limitations in 4 areas. (Tr. 718). His marked limitations included his ability to: work in coordination with or proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in a work setting. (Tr. 718). Dr. Staskavich ultimately determined that Plaintiff was "unemployable." (Tr. 718).

In formulating Plaintiff's RFC, the ALJ gave significant weight to the opinion of Dr. Umana a well as the findings of Dr. Swain because he found those assessments to be consistent with the medical evidence of record as a whole, including the consultative evaluation and Plaintiff's own reports of functioning. (Tr. 26). The ALJ assigned "some weight" to the evaluation of Dr. Berg, noting that Dr. Berg relied heavily on Plaintiff's statements relating to his ability to get along with others; and therefore did not accept his conclusions in that regard. *Id.* The ALJ assigned "less weight" to the assessment completed by Dr. Staskovich which indicated that Plaintiff had moderate and marked functional limitation due to his mental impairments and was unemployable. The ALJ

7

noted that Dr. Staskavich failed to provide any reasoning or medical support for her opinion and that such opinion is inconsistent with the medical evidence of record as a whole. *Id.* The ALJ also assigned less weight to the opinion of Plaintiff's treating psychiatrist, Dr. Lu, finding that it was inconsistent with the evidence of the medical record as a whole and was not supported by any narrative assessment. (Tr. 27).

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected."* Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the

8

factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley,* 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416 .927(d)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d) (3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004).

The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Social Security Ruling 96–2p, 1996 WL 374188, at *5 (1996)." *Wilson,* 378 F.3d at 544. The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[ ] meaningful review of the ALJ's application of the rule." *Id.* Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id.* at 547. Here, the ALJ's decision does not reflect an analysis of these factors.

As detailed above, the ALJ rejected the findings of Plaintiff's treating physician,

Dr. Lu, because he found "her opinion is inconsistent with the medical evidence of record as a whole, including Dr. Berg's assessment, as well as her own treatment records which indicate decreased symptoms and describe Plaintiff as doing well. However, such determination is not substantially supported.

Furthermore, the ALJ also discounted Dr. Lu's assessments because she "failed to provide any reasons to support her RFC assessment and merely checks off various areas and circles applicable factors without explanation." (Tr. 27). Plaintiff's counsel, however, asserts that he asked Dr. Lu to "circle" the clinical correlates (the "A" criteria in the Listing) and the functional severity ("B" criteria) aspects of Mr. Merritt's problems on a very specific Listings questionnaire that set forth the precise requirements of the two Listings in question. Plaintiff's counsel also asked Dr. Lu to complete (to "make check marks," to use the ALJ's term) on the second form. In completing these two forms, Dr. Lu provided in capsule summary the findings that she had made and the opinions that she had developed after treating Plaintiff for several months.

The undersigned recognizes that an ALJ is entitled to give little weight to a treating physician's assessment that does not provide much in the way of explanation for her findings. *Ilesamni Woods v. Astrue*, No. 3:09 CV 0479, 2010 WL 5490998, at *8 (S.D. Ohio Nov. 29, 2010) (Ovington, MJ) (ALJ properly rejected treating physician's opinion where doctor "did not explain his disability conclusions in any meaningful detail"). Here, however, in evaluating Dr. Lu's findings, the ALJ failed to properly consider Dr. Lu's treatment notes, her treatment history of Plaintiff, as well as her

10

objective findings.[1]

Notably, the ALJ improperly determined that Dr. Lu assessments were inconsistent with her treatment notes because she reported that Plaintiff was improving and felt "better." (Tr. 16, 19). As recently noted by the Sixth Circuit:

> Even if Dr. Hoffmann's use of the word "better" referred to Plaintiff's mood, this word did not provide the ALJ with substantial evidence from which to find that Plaintiff's mental impairment had subsided. The ALJ made no inquiry into the degree of improvement, or from what baseline Plaintiff had improved. Under the ALJ's logic, any improvement in one's mood, regardless of how small and from what level the individual improved, would defeat a claim of mental impairment. This cannot be so. By concluding that some unspecified improvement in Plaintiff's mood cured any anxiety or depression that Plaintiff was experiencing, "the ALJ impermissibly substitute[ed] his own judgment for that of a physician." *McCain v. Dir., Office of Workers Comp. Programs,* 58 Fed.Appx. 184, 193 (6th Cir.2003). The ALJ's conclusion appears to be grounded in a myopic reading of the record combined with a flawed view of mental illness. *See Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir.1990) (noting that judges, including ALJs in social security cases, must resist the "temptation to play doctor").

*Boulis–Gasche v. Comm'r of Soc. Sec.,* 451 F. App'x 488, 494 (6th Cir.2011). *See also Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 322–23 (6th Cir. 2015) (these notes [noting improvement] in no way contradict Dr. Wee's general assessment of Winn's mental health. The notes indicate progress and improvement from some previous baseline; they are not inconsistent with the conclusion that Winn's overall condition was such that she suffered from severe mental impairment."). Here, as in *Boulis-Gasche*,

---

[1] Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). *See* 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

the ALJ made no inquiry into the degree of improvement, or from what baseline Plaintiff had improved.

Next, in determining that Dr. Lu's findings contradicted the record evidence the ALJ, noted that Dr. Lu's conclusion about marked difficulty in maintaining concentration was inconsistent with Plaintiff's "… ability to *succeed* in college level courses." (Tr. 27)(emphasis added). This is a complete mischaracterization of the record. Notably, the record indicates that Plaintiff took approximately six classes at National College in 2013. (Tr. 319). He withdrew from 2 of the classes and completed the remaining 4 classes earning a 1.1 grade point average; far from "succeeding" in college as found by the ALJ. As such, the ALJ's reliance on this fact is completely erroneous.

It is well established that an ALJ may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240–41 (6th Cir.2002). The ALJ's selective (and factually unsupported) citations to Plaintiff's reported daily activities do not fairly portray his mental abilities. *See Cohen v. Secretary of Dep't of Health and Human Services,* 964 F.2d 524 (6th Cir.1992) (finding that " '[a]ttending college on a part-time basis is not the equivalent to being able to engage in substantial gainful [work] activity.' " (quoting *Parish v. Califano,* 642 F.2d 188, 191 (6th Cir.1981)). Accordingly, to the extent the ALJ rejected Dr. Lu's opinions because they were inconsistent with Plaintiff's ability to "succeed in college" such a determination is not supported by substantial evidence.

Furthermore, contrary to the findings of the ALJ, Dr. Lu's opinions are supported by the findings of Dr. Berg and Dr. Staskavich, both of whom examined Plaintiff. As

12

noted above, upon examination, Dr. Berg determined that Plaintiff would have some difficulty with attention and concentration and would have difficulty responding appropriately to supervision and to co-workers. (Tr. 557-64). Dr. Berg further opined that Plaintiff would have reduced stress tolerance with tendency to easily become agitated and angry when under stress. Based on this, he determined that Plaintiff would have difficulty responding appropriately to work pressures. (Tr. 564).

However, the ALJ discounted Dr. Berg's findings, at least in part, because they were based upon Plaintiff's reports of his symptoms. However, contrary to the findings of the ALJ, the fact that those opinions were based on Plaintiff's self-reports does not provide an adequate basis to reject such findings. Notably, the Sixth Circuit Court of Appeals, citing *Poulin v. Bowen,* 817 F.2d 865 (D.C.Cir.1987), stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently; the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness.... When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen,* 874 F.2d 1116, 1121, (6th Cir.1989).

In *Blankenship,* the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history. *Blankenship,* 874 F.2d at 1121. Thus, interviews are clearly an

13

acceptable diagnostic technique in the area of mental impairments and Dr. Berg could rely upon Plaintiff's subjective complaints elicited during her treatment sessions in formulating Plaintiff's functional restrictions. *See Warford v. Astrue,* No. 09–52, WL 3190756, at *6 (E.D.Ky. Aug. 11, 2010) (finding interviews are an acceptable diagnostic technique in the area of mental impairments).

Further, Dr. Staskavich evaluated Plaintiff at the request of Hamilton County Job & Family Services. Dr. Staskavich opined that Plaintiff's mental impairments rendered him unemployable. In this regard, she determined that Plaintiff was markedly limited in terms of his ability to work in coordination with or proximity to others without being distracted by them, in terms of his ability to accept instructions and respond appropriately to criticism from supervisors, in terms of his ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and in terms of his ability to respond appropriately to changes in a work setting. (Tr. 718). The ALJ rejected her findings based upon a "failure to provide any reasoning or medical support" for her opinion. The ALJ also stated that Dr. Staskavich's opinion is "inconsistent with the medical evidence of record as a whole." To the contrary, Dr. Staskavich's findings are consistent with those of Dr. Lu and Dr. Berg.

Instead, the ALJ gave controlling weight to the assessments of the state agency psychologists who did not examine Plaintiff. Notably, both of the state agency psychologists expressly stated in their reviews that they were giving "great weight" to Dr. Berg's consultative evaluation report. However, both without explanation or elaboration downplayed and minimized the import of what Dr. Berg said both about Plaintiff's ability to work with co-workers and supervisors and with respect to his ability

to maintain proper focus and concentration. As explained above, the ALJ's rejection of this portion of Dr. Berg's assessment was not substantially supported.

In light of the foregoing, the undersigned finds that Plaintiff's first assignment of error should be sustained. As such, this matter should be remanded because there is insufficient evidence in the record to support the Commissioner's conclusions. On remand, the ALJ should be instructed to properly evaluate and weigh the opinion evidence in accordance with Agency regulations and controlling law.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. See *Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir.1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. Here, all essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED AND REMANDED** under sentence four, for further

development of the record consistent with this report and recommendation, that judgment be entered, and that this case be **CLOSED.**

                 */s Stephanie K. Bowman*
                 Stephanie K. Bowman
                 United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

THOMAS MERRITT,

        Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:15-cv-323

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).